UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATHANIEL BROOKS,

     Plaintiff,

v.                            CASE NO. 8:21-cv-2967-SDM-TGW

CITY OF CLEARWATER and
JOSEPH ROSETO,

     Defendants.
_____/

## ORDER

     Nathaniel Brooks, an African-American "Rescue Lieutenant" for Clearwater Fire & Rescue (CFR), sues (Doc. 55) the City of Clearwater and Joseph Roseto, a retired human resources director for the City, and asserts claims for discrimination and retaliation.  Arguing that several of Brooks's claims are time-barred, that Roseto enjoys qualified immunity, and that Brooks fails to adduce evidence sufficient to establish his claims, the City and Roseto move (Doc. 63) for summary judgment.  Brooks opposes (Doc. 79) the motion, and the City and Roseto reply (Doc. 82).

## BACKGROUND[1]

### I.    Brooks's early career

     In 1994, after an honorable discharge from the U.S. Army, Brooks joined the fire department in El Paso, Texas, where Brooks worked as an EMT and later a

---

[1] Much of Brooks's meandering response to the motion for summary judgment lacks citations or support in the record. The portions of the response that include citation to the record cite

(continued…)

paramedic.  Brooks moved to Florida in 2003 and worked as a paramedic and fire-fighter until 2005, when the City hired Brooks as a "Fire Medic" for CFR.  (Doc. 55 ¶ 19)  Brooks consistently met the City's expectations and received good reviews and evaluations.  (Doc. 55 ¶ 20)

In 2010, Brooks began pursuing a promotion to "Rescue Lieutenant."  Typically, an employee promoted to Rescue Lieutenant has several years of experience as a "Fire Lieutenant," a supervisory but lower-ranking position, but the City considered the "overall experience" of a candidate.  (Doc. 64-1 at 293:14–24; Doc. 79-3 ¶ 16)  The City added Brooks to a list of candidates for promotion to Rescue Lieutenant.  Brooks was the only African-American candidate on the list and one of two candidates on the list who had not served as a Fire Lieutenant.  (Docs. 66; 66-1; and 79-4 ¶¶ 5–7)  In 2010 and 2012, the City promoted to Rescue Lieutenant two white candidates, each of whom had several years of experience as a Fire Lieutenant. (Doc. 64 at 93:9–21; Doc. 66)  The City promoted Brooks to Fire Lieutenant in 2012, and Brooks continued to pursue, and to request training for, the Rescue Lieutenant position.  (Doc. 64 at 12:21–13:6; Doc. 79-3 ¶ 8)

---

entire documents (and often several documents) without any suggestion of which page or paragraph contains the supporting information. Rule 56(c)(1), Federal Rules of Civil Procedure, directs a party either to "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations" or to "show[] that the materials cited do not establish the absence or presence of a genuine dispute." "[C]onclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). And a "district court . . . has [no] obligation to parse a summary judgment record to search out [unspecified] facts or evidence . . . ." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006); *see also State Farm Mut. Auto. Ins. Co. v. Muse*, 2022 WL 413417, at *4 (11th Cir. 2022); *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112 (8th Cir. 2004). The following facts are either undisputed or construed most favorably to Brooks, but this order ignores the unsworn allegations by Brooks that are not supported by the record.

Every two years, the City amended the candidate list.  Brooks remained on the amended list, which comprised four white candidates and two African-American candidates.  (Doc. 64-6 at 2)  In 2014, the City promoted a white candidate, Charles Gibson, to Rescue Lieutenant.  Although Brooks had more overall experience as a paramedic and firefighter, Gibson had worked at CFR since 1995 and had served as a Fire Lieutenant since 2003.  (Doc. 64-6 at 5)  Brooks filed a charge with the EEOC and alleged that the decision to promote Gibson instead of Brooks was discriminatory and that the City, while denying Brooks training to act as a Rescue Lieutenant, trained white candidates.[2]  (Doc. 79-10 at 2)

In July 2015, Brooks filed another charge with the EEOC and alleged that on four unspecified "opportunities" between April 2015 and July 2015 the City permitted white employees but not Brooks to act as a Rescue Lieutenant during Brooks's shift.  (Doc. 64-7 at 3)  In October 2015, after a fire chief "yelled" at Brooks for failing to silence his cell phone during a meeting but said nothing to another employee who during the meeting answered a phone call, Brooks complained to human resources that he worked in a "hostile work environment."[3]  (Doc. 55 ¶ 38; Doc. 79-3 ¶ 19)

In November 2015, CFR discovered a sexual relationship between another Fire Lieutenant and his subordinate.  To separate the pair and to "address

---

[2] Brooks asserts no claim in this action based on the facts alleged in his 2014 EEOC charge.

[3] The allegations in the complaint and in Brooks's affidavit differ. According to Brooks's affidavit, the fire chief "yelled" at Brooks for no reason, but the complaint alleges that the fire chief yelled at Brooks for failing to silence Brooks's cell phone.

operational needs," the fire chief swapped the other Fire Lieutenant and Brooks's shifts and stations.  (Doc. 67 ¶ 4)  The City transferred the other Fire Lieutenant to "B shift" at the beach fire station (a preferred location) and transferred Brooks to "C shift" at the other Fire Lieutenant's former station.  (Doc. 64 at 109:5–110:6)  At Brooks's new station, the Rescue Lieutenant position was vacant.  The City told Brooks that the transfer would allow Brooks to act as a Rescue Lieutenant, and for several months Brooks acted as a Rescue Lieutenant.  (Doc. 64 at 110:19–25, 116:23–118:10)  Brooks alleged that the transfer was retaliatory and that he could have acted as a Rescue Lieutenant without the transfer.  (Doc. 64 at 118:6–10, 119:19–120:15)  The union submitted on Brooks's behalf a grievance about the transfer.  (Doc. 64-6 at 45)

In early 2016, the City announced the intent to amend the Rescue Lieutenant promotion list and invited interested candidates, including candidates on the existing promotion list, to complete a test to determine promotion eligibility.  (Doc. 79-3 ¶ 23)  Usually, CFR promoted candidates to fill vacancies before the expiration of a promotion list.  (Doc. 79-13 ¶ 9)  But the City did not promote Brooks before the list expired.  According to Sean Becker, the former union president for CFR, no employee other than Brooks who was eligible for promotion and who acted in a "higher-level position" for eight months was denied a promotion.  (Doc. 79-13 ¶¶ 6–7)  Brooks complained to Joseph Roseto, the director of human resources, about the lack of promotions for African-American candidates.  (Doc. 55 ¶¶ 41 and 43)  Also, Brooks e-

- 4 -

mailed an "addendum" to the EEOC that complained about Brooks's transfer to "C shift" and about the "new selection process" for the promotion.  (Doc. 64-2 at 40)

Although Brooks completed the test and received the second highest grade on the written portion of the exam, the City placed Brooks "near the bottom of the list" because of his score on the "subjective portion" of the test.  (Doc. 55 ¶ 43; Doc. 79-5 at 20)  Brooks e-mailed the "equity services manager" in human resources and "voiced concerns" that the test was "unfair and subjective."  (Doc. 79-5 at 20)  In July 2016 and in August 2016, the City promoted to Rescue Lieutenant two white candidates.  (Doc. 79-5 at 20)  At his deposition, Brooks reported that Greg Newland, one of the promoted candidates, had more overall experience and more experience at CFR than Brooks and reported that Alex Monte, the other promoted candidate, had less overall experience but more experience at CFR.  (Doc. 64 at 77:21–79:20)

## II.   Brooks's termination

In fall 2016, the City began investigating an "anonymous tip" to "look into" Brooks's background.  On Brooks's application to work for CFR, Brooks stated that he had never "been convicted of any offense against the law or entered a plea of nolo contendere (no contest) to an offense . . ." and that he was not "under any current charge for any offense[] . . . ."  (Doc. 64-10 at 2)  Although the City later removed from the employment application any question about prior convictions or charges, the City maintained a "Serious Incident Reporting Policy," which required employees to report to their supervisor any "reportable serious incident," including any criminal act.  (Doc. 64-11 at 90)  While investigating the "anonymous tip," the City obtained a

third-party background report on Brooks that revealed that Brooks had a misde-
meanor conviction for a 1987 unlawful-weapons charge, a 2004 solicitation-of-prosti-
tution charge for which a court entered a *nolle prosequi* in 2006, and a 2005 worthless-
check charge for which a court ordered probation but withheld adjudication.
(Doc. 64-9 at 2–5 and 12)  Brooks never reported a criminal charge.

The City confronted Brooks with the report.  Brooks proffered evidence that
he received no conviction for the 1987 charge because a court deferred adjudication
and eventually dismissed the charge.  (Doc. 79-11 at 2)  According to Brooks, Roseto
ignored the court order deferring adjudication of the 1987 charge.  Brooks sent a
message to the fire chief and explained the failure to report the charges.  (Doc. 64
at 201:13–202:6; Doc. 64-8 at 6–7)  According to the message, Brooks declined to re-
port the solicitation charge because he thought the charge was a citation only, be-
cause the "incident" occurred "nearly a year" before Brooks joined CFR, because a
public defender's failure to appear at a hearing caused the issuance of the warrant for
Brooks's arrest for the charge, and because the charge would result in dismissal ra-
ther than a conviction.  (Doc. 64-8 at 6; Doc. 64-10 at 8)  Brooks declined to report
the worthless-check charge because the charge resulted from someone stealing checks
from Brooks's car, because Brooks was unaware of the charge until after he began at
CFR, and because the charge would result in dismissal.  (Doc. 64-8 at 7)

After convening a pre-disciplinary hearing with Brooks, the fire chief recom-
mended that the City terminate Brooks.  (Doc. 64 at 226:10–227:20; Doc. 64-13
at 15)  On December 15, 2016, William Horne, the city manager, sent Brooks a

"termination and dismissal notice" that reported that Brooks's termination was effective at the end of the day on December 27, 2016.  (Doc. 64-13 at 16)  Brooks met with Roseto for a "termination hearing."[4]  According to Brooks and Becker, the City never terminated an employee with good evaluations and with more than a decade of experience.  (Doc. 79-4 at 7–8; Doc. 79-9 at 3)  Also, according to Brooks, the City declined to terminate several white employees who committed crimes while employed by the City.  (Doc. 64-1 at 349:5–363:19)  "Around the time" the City investigated the "anonymous tip" about Brooks, the City investigated another "anonymous tip" about an African-American employee, who complained about inequality in the workplace.  Eventually, the City terminated the employee.[5]  (Doc. 64-1 at 375:16–378:24)  On March 24, 2017, Brooks filed another EEOC charge, alleging that his termination was discriminatory and retaliatory.  (Doc. 64-8 at 8)

## III.   Brooks's reinstatement

Brooks grieved the termination through the union.  In accord with the collective bargaining agreement, the City and Brooks submitted the dispute to arbitration.  (Doc. 64-5 at 18–19)  The arbitrator determined that the City's investigation failed to

---

[4] Brooks alleges that after the hearing Roseto caused Becker to call Brooks and offer $10,000 in exchange for Brooks's releasing the EEOC charges. (Doc. 79-4 at 6) This order excludes Brooks's allegation because the allegation is inadmissible under Rules 408 and 802, Federal Rules of Evidence, and is not reducible to admissible form at trial.

[5] Brooks's allegation about the employee is supported by hearsay only. But because the allegation is reducible to admissible form at trial and because the evidence is construed most favorably to Brooks, this order considers the allegation.

afford Brooks due process and that the City lacked just cause to terminate Brooks.[6]
(Doc. 79-2 at 19–20)  The arbitrator ordered the City to reinstate Brooks and to com-
pensate Brooks to restore him to the position he would occupy if he were never termi-
nated but permitted the City to require Brooks to attend a "multi-week orientation
and training program as part of [Brooks's] reinstatement process."  (Doc. 64-4 at 52;
Doc. 79-2 at 20; and Doc. 79-9 at 4)  The City reinstated Brooks, retroactively pro-
moted Brooks to Rescue Lieutenant, and paid Brooks backpay.[7]  (Doc. 67 ¶ 7;
Doc. 64-7 at 7)  Brooks completed 260 online-training assignments, and the fire chief
informed Brooks that Brooks was required to "begin shadowing the recruit class . . . ."
(Doc. 64-14 at 18; Doc. 79-4 at 12)  The City's human resources department and the

---

[6] Although the collective bargaining agreement (Doc. 64-5 at 16) exempts from arbitration any federal or state civil-rights claim for discrimination and although the issue at arbitration was whether "just cause and due process [] justif[ied] the termination of [Brooks,]" the arbitral decision ruminates about an "odor" of racial discrimination present in Brooks's termination. (Doc. 79-2 at 19) The arbitrator concludes that the evidence is insufficient to establish that the City discriminated against Brooks and states that a conclusion about racial discrimination would require additional evidence. (Doc. 79-2 at 19) Nevertheless, to support his allegations that the City discriminated and retaliated against him, Brooks relies heavily on the arbitrator's ruminations. But the arbitrator's statements about racial discrimination clearly exceed his authority under the collective bargaining agreement and admittedly lack sufficient evidentiary support. Arbitral decisions about claims under Title VII or under 42 U.S.C. § 1983 are not binding in a later action in court. *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 290–92 (1984) ("[B]ecause an arbitrator's authority derives solely from the contract . . . an arbitrator may not have the authority to enforce [Section] 1983."); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56–58 (1974) ("Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII."); *Johnson v. Univ. of Wisconsin-Milwaukee*, 783 F.2d 59, 62 (7th Cir. 1986) ("The general rule is that a prior arbitration should not, and indeed must not, be given preclusive effect in a subsequent Title VII suit . . . or a Section 1983 suit[.]").

[7] According to Brooks, the backpay from the City was insufficient to restore Brooks to the position he would have occupied if he were never fired, and the City never restored Brooks's "acting driver credentials." (Doc. 64-11 at 119–20) But Brooks apparently neither informed the arbitrator of the deficiency nor returned to the arbitrator to challenge the adequacy of the backpay after his reinstatement. (Doc. 64 at 56:13–57:2)

fire chief required Brooks to participate fully in the recruit class and in all physical training.  (Doc. 79-4 at 11)

At the end of the recruit class, the fire chief sent Brooks a memorandum (Doc. 64-7 at 38–39) that listed several requirements for Brooks's training and that reported CFR's expectation that Brooks would become re-certified as a paramedic and complete his training by the end of March 2019, several months after Brooks's reinstatement.  Several employees of CFR who returned after an extended absence were not required to participate in a new-recruit class.  (Doc. 79-6 ¶ 4)  The City permitted one of Brooks's subordinates, Brian Swartz, who was terminated and later reinstated, to shadow a recruit class without fully participating.  (Doc. 79-7 at 2–3)  In May 2019, Brooks filed with the EEOC a charge alleging that the training requirement was retaliatory and discriminatory.

Brooks remains employed as a Rescue Lieutenant with CFR and reports no complaints about his job.  (Doc. 64 at 141:7–18; Doc. 65)

## IV.    Procedural history

The EEOC has issued Brooks right-to-sue letters for his 2015, 2017, and 2019 EEOC charges.  The second amended complaint comprises three counts, one for each EEOC charge, but each count asserts several claims.  Count I, which Brooks premises on his 2015 EEOC charge, asserts against the City a claim under Title VII and a claim under 42 U.S.C. § 1981 and alleges that the City's declining to promote Brooks and transferring Brooks were retaliatory and discriminatory.  Count II, which Brooks premises on his 2017 EEOC charge, asserts against the City a claim under

Title VII and asserts against the City and Roseto a claim under 42 U.S.C. § 1981.
Count II alleges that the City and Roseto investigated and terminated Brooks in re-
taliation for his earlier EEOC charges and his complaints about the lack of promo-
tions for African-American employees. Count III, which Brooks premises on his
2019 EEOC charge, asserts against the City a claim under Title VII and asserts
against the City and Roseto a claim under 42 U.S.C. § 1981. Count III alleges that
the City and Roseto "concocted" Brooks's training requirements to force Brooks to
quit and to retaliate against Brooks for his complaints about his termination.

## ANALYSIS

### I.  The Section 1981 claims in Counts I and II are time-barred

Several of Brooks's claims under Section 1981 are time-barred. A plaintiff as-
serting in Florida a claim under Section 1981 must assert the claim within four years
after the day that the claim accrued. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th
Cir. 2003); *Baker v. Gulf & W. Indus., Inc.*, 850 F.2d 1480, 1481 (11th Cir. 1988). Be-
cause each Section 1981 claim in Counts I and II accrued before December 23, 2017,
that is, four years before Brooks filed this action,[8] each Section 1981 claim in Counts
I and II is time-barred. Summary judgment is warranted on each Section 1981 claim
in Counts I and II.

---

[8] Brooks filed this action on December 23, 2021.

## II.   Roseto enjoys qualified immunity

To sustain a claim against Roseto in his individual capacity, Brooks must show that Roseto — not the City or some other person — personally participated in a violation of Brooks's rights, and "some affirmative link [must] causally connect" Roseto to the violation. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000); *Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds, Kendrick v. Penske Transp. Servs., Inc.*, 220 F.2d 1220, 1228 (10th Cir. 2000); *Crawley v. Paskert-Johnson Co.*, 2008 WL 4793650, at *1 (M.D. Fla. 2008); *Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999) (McMahon, J.) ("In each of the cases that have allowed individual liability, the individuals have been supervisors who were personally involved in the discriminatory activity.").

Even if Roseto personally violated Brooks's rights, qualified immunity protects Roseto from a suit unless Roseto violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also Johnson v. City of Fort Lauderdale, Fla.*, 126 F.3d 1372 (11th Cir. 1997) (holding that fire department officials who demoted and discharged an African-American employee enjoyed qualified immunity from Section 1981 and Section 1983 claims because adequate lawful motives supported the officials' actions). To invoke qualified immunity, Roseto must show that he acted "within the scope of his discretionary authority." *Vinyard*, 311 F.3d at 1346.  If Roseto acted in his

- 11 -

discretionary authority, Brooks must show that Roseto's actions violated a "clearly established" constitutional right. *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010).

The evidence in the record fails to show that Roseto personally violated Brooks's rights. As discussed above, any claim premised on Roseto's conduct before 2017 is time-barred. The record evidences no conduct by Roseto that would support a discrimination or retaliation claim. Even if Brooks could assert against Roseto a timely claim based on Roseto's involvement in the investigation that led to Brooks's 2016 termination, the fire chief, not Roseto, recommended Brooks's termination, and Horne, not Roseto, signed Brooks's termination. The fact that Roseto participated in the investigation and perhaps weighed evidence during the investigation fails to establish that Roseto violated Brooks's clearly established rights. *See Salazar v. City of Com. City*, 535 Fed. Appx. 692, 703 (10th Cir. 2013) (affirming a district court's holding that a human resources director enjoyed qualified immunity because the director was not a "decision maker" and lacked a "retaliatory motive"); *Gilroy v. City of Fort Pierce*, 2020 WL 12880937, at *7 (S.D. Fla. 2020) (Brannon, M.J.), *R. & R. adopted*, 2020 WL 12880936 (S.D. Fla. 2020), *aff'd sub nom. Gilroy v. Baldwin*, 843 Fed. Appx. 194 (11th Cir. 2021).

Apparently attempting to establish Roseto's role in the alleged violations, Brooks (1) attributes to Roseto any conduct by CFR management, the City's human resources department, and in some circumstances the City; (2) speculates about Roseto's involvement in Brooks's termination and post-reinstatement training; and (3) alleges the conclusion that Roseto discriminated and retaliated against Brooks.

- 12 -

Again, Roseto is responsible for his own actions, not the actions of CFR or the City. Unsupported speculation cannot defeat summary judgment because speculation creates no genuine issue of material fact. *Cordoba v. Dillard's*, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "[C]onclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). Instead of speculation and conclusory allegations, Brooks must meet the motion for summary judgment with "specific factual evidence," not "mere allegations." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 2014 WL 4185297, at *4 (M.D. Fla. 2014) (Antoon, J.) (quoting *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997)).

The speculation in Brooks's affidavits about Roseto's "intent," "plan," and knowledge and the speculative and conclusory allegations that Roseto fabricated the anonymous tip, "drove" Brooks's termination, and "made up" the requirements of the recruit training program offer no probative value and cannot defeat summary judgment. Although Brooks claims — and affirms — that he bases his affidavits on "personal knowledge," the affidavits mention no fact suggesting that Brooks had personal knowledge of how the City conducted its investigation or of who created the training requirements after Brooks's reinstatement. *See Jefferson*, 891 F.3d at 924–25. Without specific factual evidence that is neither conclusory nor speculative, Brooks cannot establish that Roseto in his individual capacity violated one of Brooks's clearly established constitutional rights, and summary judgment for Roseto is warranted.

### III.    The remaining claims

A.    Count I – Title VII claim for not promoting and training

1.    The scope of Brooks's 2015 EEOC charge

*Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277, 1280 (11th

Cir. 2004) (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th

Cir. 2000)), explains that a Title VII "complaint is limited by the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimi-

nation."  In other words, a plaintiff cannot assert a Title VII claim "unless the alleged

discrimination [was] the subject of a timely-filed EEOC charge." *Jerome v. Marriott*

*Residence Inn Barcelo Crestline/AIG*, 211 Fed. Appx. 844, 846 (11th Cir. 2006).  Later

allegations can "clarify" an EEOC charge, but "allegations cannot clarify what is not

in [an] EEOC charge." *Little v. CSRA, Inc.*, 834 Fed. Appx. 495, 498 (11th Cir. 2020).

*Littlejohn v. City of New York*, 795 F.3d 297, 323 (2d Cir. 2015), persuasively explains

that "unsworn letters sent to the EEOC describing additional claims of discrimination

unrelated to the claims described in the EEOC charge cannot 'enlarge [the] scope [of

the original charge] to include new claims.'"  (alterations in original)  Any later action

is limited to allegations within the scope of the sworn EEOC charge and to allegations

"reasonably related" to the charge.  "Allegations of new acts of discrimination, of-

fered as the essential basis for the requested judicial review, are not appropriate." *Ray*

*v. Freeman*, 626 F.2d 439 (5th Cir. 1980).[9]  But retaliation claims that "grow[] out of

---

[9] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), adopts as binding precedent in the Eleventh Circuit decisions by the Fifth Circuit "handed down" before September 30, 1981.

an earlier [EEOC] charge" are within the scope of the charge. *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981).

Brooks's 2015 EEOC charge complains of four unspecified "occasions" that the City failed to permit Brooks to act as a Rescue Lieutenant. Count I abandons any claim about these "occasions"[10] and instead asserts a discrimination claim for failing to promote Brooks and a retaliation claim for transferring and terminating Brooks. The 2016 "addendum" mentions the transfer and the lack of promotion, but Brooks submitted both the charge and the "addendum" before his termination. Even if Brooks proves that his termination was retaliatory, the termination is the subject of the 2017 EEOC charge and Count II. Brooks's termination is not "reasonably related" to the 2015 EEOC charge.[11]

Brooks's 2015 EEOC charge encompasses his claims for retaliatory transfer and failure to promote. Because Brooks alleges that the transfer is in retaliation for his EEOC complaint, Brooks's retaliation claim based on the transfer is within the scope of his EEOC charge. *See Gupta*, 654 F.2d at 414. Despite Brooks's acting as a

---

[10] *Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004), persuasively explains that "[a]n employer's denial of an employee's request for more training is not, without more, an adverse employment action." *See Gooden v. IRS*, 679 Fed. Appx. 958, 965 (11th Cir. 2017) ("A denial of training may rise to the level of an adverse employment action when 'the training is materially related to the employee's job responsibilities or possibilities for advancement under limited circumstances.'").

[11] Also, if Count I covers Brooks's termination, Count II is redundant. Count II, not Count I, addresses Brooks's termination.

- 15 -

Rescue Lieutenant for several months after the transfer, the City never promoted Brooks and eventually promoted a white candidate.[12]

2.      Brooks's retaliatory transfer claim

To prove that the City's transferring Brooks was retaliatory, Brooks must establish (1) that Brooks engaged in an activity protected under Title VII, (2) that Brooks suffered an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action.  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  An employment action is adverse if the action effects "a serious and material change in the terms, conditions, or privileges of employment."  *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012).  Although "close temporal proximity" between a protected activity and an adverse employment action might evidence a "causal connection," "mere temporal proximity, without more, must be 'very close.'"  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001), and citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000)).  For example, "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough [to establish causation]."  *Thomas*, 506 F.3d at 1364.

---

[12] Count I appears to challenge each time after 2012 that the City declined to promote Brooks, but Brooks's 2014 EEOC charge challenges the first three times that the City declined to promote Brooks. (Doc. 55 ¶ 30–32) Brooks has filed no action based on the 2014 charge and has confirmed that this action "is not based" on the 2014 EEOC charge. (Doc. 55 ¶ 32) Thus, each time before 2016 that the City declined to promote Brooks is not within the scope of Count I.

Because more than three months elapsed between the EEOC complaint and the transfer and because Brooks adduces no other evidence of retaliatory intent, Brooks fails to establish that the transfer was retaliatory. Even assuming that Brooks's later complaint about a hostile work environment was the "protected activity," Brooks fails to establish that he suffered an adverse employment action. The transfer altered neither Brooks's status nor the terms and conditions of his employment. Instead, the transfer presented Brooks the opportunity to act as a Rescue Lieutenant — the training that Brooks requested. Brooks's "subjective view of the significance and adversity of the employer's action is not controlling[.]" *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006). Further, uncontradicted evidence in the record establishes that the City moved Brooks to a different shift to address an operational need (that is, to maintain staffing requirements at a station after separating other employees who engaged in an inappropriate workplace relationship). On Brooks's claim for retaliatory transfer, summary judgment for the defendants is warranted.

  3. Brooks's claim for failure to promote

To show that the City discriminatorily failed to promote Brooks, Brooks must establish "(1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997). If Brooks establishes the necessary predicate, the burden shifts to the City to "articulate

some legitimate, nondiscriminatory reason for the employee's rejection." *Wu v. Thomas*, 847 F.2d 1480, 1483–84 (11th Cir. 1988) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  If the City articulates a reason, Brooks must show that a discriminatory reason is more likely or must show that the proffered reason "is unworthy of credence." *Wu*, 847 F.2d at 1484 (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Because the record shows that each promoted candidate held the Fire Lieutenant position longer than Brooks, the City articulates a reason to promote other candidates.  But Brooks acted in the Rescue Lieutenant position for several months without promotion.  A dispute of fact remains about whether Brooks was more qualified than the other employees who ultimately acceded to the Rescue Lieutenant position and whether the City's articulated reason for promoting the other candidates is a pretext.  Brooks's claim for failure to promote survives summary judgment.

B.    Count II – Title VII claim for discriminatory and retaliatory termination

Because Brooks adduces no direct evidence of discrimination, Brooks must prove that his termination was discriminatory by establishing (1) that he is a member of a protected class, (2) that he experienced an adverse employment action, (3) that the City treated similarly situated employees more favorably, and (4) that Brooks was qualified for the job. *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015); *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).  If Brooks establishes the necessary predicate, the City must articulate a "legitimate, nondiscriminatory reason" for Brooks's termination. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d

1319, 1323 (11th Cir. 2006).  If the City articulates a reason, Brooks must show that the reason is a pretext for unlawful discrimination.  *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

As discussed above, Brooks can establish retaliation by showing (1) that Brooks engaged in an activity protected under Title VII, (2) that Brooks suffered an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action.  *Crawford*, 529 F.3d at 970.  If Brooks establishes the necessary predicate, the City must articulate a "legitimate, non-discriminatory reason" for the termination, and, if the City articulates a reason, Brooks must show that the reason is a pretext.  *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020).

Factual disputes pervade these claims.  The parties dispute whether any other employees were similarly situated.  The record shows that the City declined to terminate several employees who committed criminal acts or faced criminal charges while employed, but the City contends that several of the other employees held different positions than Brooks or timely reported any criminal charge.  Construed most favorably to Brooks, a genuine dispute of fact exists about which employees, if any, are similarly situated to Brooks.

Similarly, construed most favorably to Brooks, a dispute exists about whether the City's articulated reason for terminating Brooks, that is, Brooks's failure to disclose on his application to CFR several criminal charges, is a pretext for an unlawful action.  The evidence establishes that the City investigated and terminated Brooks

- 19 -

about the time that Brooks complained about the lack of promotions for African-Americans.[13]  Brooks's claim that his termination was discriminatory and retaliatory survives summary judgment.

C.   Count III – Title VII and Section 1981 claim for retaliation after reinstatement

　　　1.   Title VII claim for retaliation

Brooks contends that the training that the City imposed after Brooks's reinstatement was retaliatory.  "[N]ot everything that makes an employee unhappy is an actionable adverse action."  *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998).  Generally, "mandatory training is [] not an adverse employment action." *Robles v. New York City Health & Hosps. Corp.*, 2023 WL 5337766, at *7 (E.D.N.Y. 2023) (Vitaliano, J.); *Redway v. Univ. of Miami*, 2018 WL 10758655, at *7 (S.D. Fla. 2018) (Louis, M.J.); *Ramsay v. Broward Cnty. Sheriff's Off.*, 2008 WL 111304, at *5–6 (S.D. Fla. 2008) (Marra, J.) (applying *Doe*, 145 F.3d at 1449), *aff'd*, 303 Fed. Appx. 761 (11th Cir. 2008)).  Also, "if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Thomas*, 506 F.3d at 1364 (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004)).  Because Brooks's filing a grievance and participating in an arbitration not directed to race discrimination constitutes no protected activity under Title VII, Brooks must show some other protected activity that instigated the alleged

---

[13] Although the temporal connection between Brooks's earlier EEOC complaints and Brooks's termination is likely too attenuated to sustain a retaliation claim, Brooks sent e-mails complaining of the lack of promotions within two months of the beginning of the investigation that led to Brooks's termination.

retaliation or must prove his prima facie case by some other theory.  *Bond v. Dep't of Air Force*, 202 Fed. Appx. 391, 396 (11th Cir. 2006); *see also Harrison v. Oakland Cnty.*, 612 F. Supp. 2d 848, 860–61 (E.D. Mich. 2009) (Rosen, C.J.) ("Consequently, his participation in the arbitration proceedings, which were conducted wholly apart from any pending EEOC charge or proceeding, does not qualify as protected activity under Title VII's anti-retaliation provision, and Plaintiff cannot establish a prima facie case of Title VII retaliation based upon this activity.")

As an alternative to establishing each element of the prima facie case for retaliation, Brooks survives summary judgment by showing a "convincing mosaic of circumstantial evidence that raises a reasonable inference of retaliation." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300 (11th Cir. 2023); *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023).  For example, Brooks may proffer evidence of "suspicious timing[ and] ambiguous statements" or evidence of "systematically better treatment of similarly situated employees[.]"  *Berry*, 84 F.4th at 1304.

Brooks maintains that the City required his training in retaliation for his EEOC complaints and for his grievances, but the City sent Brooks to training more than a year after his most temporally proximate EEOC complaint.  The grievance and arbitration are not protected activities under Title VII because the collective bargaining agreement, under which Brooks filed his grievance and arbitrated, expressly excepts "[a]ny claim of discrimination under Federal or State civil rights laws" (Doc. 64-5 at 16) and because Brooks maintained separate from his grievance EEOC charges for discrimination and retaliation.

Construing the record most favorably to Brooks, however, evidence shows that the training requirements the City imposed on Brooks exceeded training requirements imposed on other CFR employees who returned from extended absences. (Doc. 79-6 ¶ 4; Doc. 79-12 ¶ 8)  Also, Brooks's affidavit suggests that the City increased the scope of Brooks's training after the expiration of the time within which Brooks could petition the arbitrator to review the training requirements.  (Doc. 79-4 ¶ 44)  The City contends that the other employees who returned from an absence are distinguishable from Brooks and that much of the training, including Brooks's training to attain his paramedic certificate, is necessary for Brooks's job.  But this factual dispute is better resolved at trial.

2.    Section 1981 claim

In addition to the Title VII claim, Brooks attempts against the City a Section 1981 claim for retaliation.  Brooks can assert no Section 1981 claim against the City because Section 1983 "constitutes the exclusive remedy against state actors for violations of the rights contained in [Section] 1981."  *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000).  *King v. Butts County, Ga.*, 576 Fed. Appx. 923, 931 (11th Cir. 2014), counsels that the "failure to plead the correct legal theory is not necessarily fatal to a plaintiff's claim when the defendant has sufficient and fair notice of the correct theory."  In *King*, the plaintiff "readily concede[d]" that he could not assert a Section 1981 claim but argued that the defendant had "fair and sufficient notice" that Section 1983 supported the plaintiff's "actual claim[.]"

- 22 -

From the start of this action and across two amended complaints, Brooks has consistently cited Section 1981 to support his claims against the City.  The motion for summary judgment notes (Doc. 63 at 11) that Section 1981 cannot support Brooks's claim and notes "that Brooks may correct this error on summary judgment."  But Brooks's response never addresses the City's challenge to his ability to assert his claim under Section 1981 and lacks any acknowledgment that Section 1983 supports his claim.  Despite notice of his error, Brooks has declined to assert the correct legal theory and has declined to concede that Section 1983, not Section 1981, supports his claim against the City.  Because the circumstances in this action are distinguishable from *King*,[14] because Brooks has apparently declined to clarify that he asserts his claim under Section 1983, and because Section 1981 supports no claim against a state actor, Brooks's Section 1981 claim against the City fails as a matter of law.  *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction.").

Even if Brooks had asserted his claim under Section 1983, however, Brooks identifies no "policy, custom, or practice that caused" Brooks's alleged injury (the retaliatory training).  Under *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th

---

[14] Further, the Eleventh Circuit has directed that "a district court shouldn't simply cite to one of our unpublished opinions as the basis for its decision without separately determining that it is persuasive." *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1061 (11th Cir. 2022).

Cir. 2016) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–94 (1978)), to assert a claim against the City, Brooks must prove that the City "had a policy, custom, or practice that caused the deprivation." *Swint v. City of Carrollton, Georgia*, 859 Fed. Appx. 395, 397–98 (11th Cir. 2021), explains that "[a] plaintiff must identify either 'an officially promulgated [municipal] policy' or 'an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality].'" (alterations in original) Brooks adduces no evidence establishing an official or unofficial "policy" of implementing a retaliatory training program after reinstatement. Rather, Brooks suggests that his training experience was unique.[15] Any potential Section 1983 claim fails as a matter of law.

## CONCLUSION

For these reasons and others stated by the City and by Roseto, the motion (Doc. 63) for summary judgment is **GRANTED-IN-PART**. This action proceeds (1) on Brooks's Title VII claim for failure to promote (Count I), (2) on Brooks's Title VII claim for discriminatory and retaliatory termination (Count II), and (3) on Brooks's Title VII claim for retaliation through mandatory training requirements (Count III). Summary judgment is **GRANTED** on the balance of the claims against the City and on each claim against Roseto.

---

[15] Although in some circumstances a single decision by a municipal policymaker can support municipal liability, *Swint*, 859 Fed. Appx. at 398 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)), Brooks proffers no evidence identifying the City's policymaker and fails to establish that the circumstances of this action warrant the imposition of municipal liability based on a single decision.

Separately, because Brooks added affidavits to his response after an order (Doc. 78) struck Brooks's initial response for failure to comply with the Local Rules and directed Brooks to re-file the response, the City moves (Doc. 83) to strike the affidavits added to the amended response.  The motion (Doc. 83) is **DENIED**, and the earlier motion to strike (Doc. 80) is **DENIED AS MOOT**.[16]

However, Brooks's counsel has shown continued insouciance and patent disregard for applicable rules and orders.  At least three orders (Docs. 20, 42, and 54) in this action have warned counsel to comply with the Local Rules and at least two orders (Docs. 40 and 78) have denied a motion because the motion violated the Local Rules.  The order (Doc. 78) denying Brooks's motion to exceed the page limit and striking Brooks's initial response to the motion for summary judgment directs Brooks to include in the amended response "a certificate, which confirms that counsel for Brooks has read the Local Rules and that the response complies with all applicable rules, including the Local Rules."  The order explains that "[c]ontinued failure to comply with all applicable rules, including the Local Rules, likely will result in further sanction, including a monetary sanction."  The amended response (Doc. 79) includes no certificate.  But in violation of Rule 5.2, Federal Rules of Civil Procedure, one (Doc. 79-2) of the exhibits to the amended response for summary judgment includes the unredacted social security number of a non-party.  No later than **DECEMBER 15, 2023**, counsel for Brooks must explain why an order should not

---

[16] Because the motion (Doc. 83) to strike purports to amend an earlier motion (Doc. 80), the earlier motion warrants denial as moot.

impose a monetary sanction for continued failure to comply with applicable rules, for failure to comply with a court order (Doc. 78), and for reporting the unredacted social security number of a non-party.  The clerk is directed to delete from the docket the image of page twenty-two of docket entry 79-2.

ORDERED in Tampa, Florida, on December 1, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE